FILED
CLERK

4/28/2026

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
SHENG WEI YU *et al.*,

                                   Plaintiffs,

             -against-

KOTOBUKI RESTAUARANT, INC. *et al.*,

                               Defendants.
------------------------------------------------------------------------X

**MEMORANDUM
AND ORDER**

17-CV-4202 (JMA)(JMW)

**A P P E A R A N C E S:**

Aaron Schweitzer, Esq.
Tiffany Troy, Esq.
Yige Chen, Esq.
John Troy, Esq.
**Troy Law, PLLC**
41-25 Kissena Boulevard
Flushing, NY 11355
*Attorneys for Plaintiffs*

Salvatore Puccio, Esq.
Anthony Ryan Prinzivalli, Esq.
**Garfunkel Wild P.C.**
111 Great Neck Road, Suite 502
Great Neck, NY 11021
*Attorneys for Defendants*

**WICKS,** Magistrate Judge:

Before the Court is Defendants' motion "to intervene" (ECF No. 230) seeking an "order directing Plaintiffs' counsel to cease from making false and misleading statements" to certain of the Plaintiffs, in particular, alleged threats to them about their decision not to pursue or

participate in a settlement conference.  For the reasons discussed below, the application is

**GRANTED**.

**<u>BACKGROUND</u>**

By way of background, a settlement conference had been scheduled for March 18, 2026.

Because certain individual Plaintiffs failed to appear at prior settlement conferences despite court

orders to appear, Judge Joan M. Azrack emphasized that "in-person attendance is required at all

future settlement conferences. If any Plaintiff does not attend the March 18, 2026 settlement

conference before Judge Wicks (or any future court-ordered settlement conferences), their claims

concerning the Manhattan and Babylon restaurants will be dismissed."  (Electronic Order dated

March 5, 2026.)  On March 16, 2026—two days before the scheduled hearing—Defendants filed

the present Motion to Intervene.  (ECF No. 230.)  The letter motion represented as follows:

> We write to address a significant and serious issue that has just come to our attention this afternoon concerning the handling of the settlement conference by Plaintiff's counsel. We are requesting a conference and order directing Plaintiff's counsel to cease from making false and misleading statements to the individuals who were formally opt-in plaintiffs to the underlying lawsuits.
>
> Specifically, at least one employee of Kotobuki-Babylon indicated his unwillingness to attend the upcoming settlement conference. In response, the Troy Law Firm advised him that he may be responsible for outstanding legal fees if he choose [*sic*] not to attend. That is blatantly improper, unethical and, upon information and belief, flies in the face of the documented engagement between the parties. Specifically, the Interrogatory responses provided by Plaintiffs indicated that the former opt-in plaintiffs engaged the Troy Law Firm on a continency [*sic*] basis. Now, however, the Troy Law Firm is threatening legal fees to these same individuals whom they claimed to have represented on a contingency basis if they withdraw their claims or choose not to attend the settlement conference.
>
> . . . .
>
> Accordingly, we respectfully request an order directing the Troy Law Firm from making false and misleading statements to the individuals who were listed as employees of Defendants in this case and directing the Troy Law Firm to inform all of the upcoming potential participants that if they choose not to attend the conference that there will be no legal fees that they owe the Troy Law Firm.

2

(*Id.* at 1–2.)

The Court thereupon instructed the parties to be prepared to address these representations at the court-ordered conference on March 18, 2026.  (Electronic Order dated March 18, 2026.)

At the conference, Plaintiffs' counsel did not deny the accusations.  In fact, he read into the record a chat message sent by Troy Law, PLLC ("Troy Law") to Plaintiffs, which accorded with the representations in Defendants' letter.  Seeking further clarity on the matter, the Court reserved judgment and instructed Troy Law "to file their Opposition, if any, on or before March 20, 2026, along with any supporting exhibits and documentation in furtherance of their arguments therein including, but not limited to, the relevant engagement letters and text messages referenced on the record."  (Electronic Minute Order dated March 18, 2026.)

Despite Troy Law's threats, only two Plaintiffs—Bryan Choi and Raymond Lee— showed up to the March 18 settlement conference.  So, the Court issued a *sua sponte* Report and Recommendation to dismiss the claims of Marayart Farrell, Alexander Gigliotti, Yoshie Giua, Jaemin Kim, Xiao Dan Wang, Dharm Raj Joshi, and Chee Yang Saw.  (ECF No. 231.)  Judge Azrack adopted the Report and Recommendation in full on April 15, 2026.  (Electronic Order dated April 15, 2026.)

Troy Law filed its opposition to Defendants' Motion to Intervene on March 20, 2026. (ECF No. 232.)  Troy Law's submission included both its retainer agreement with Plaintiffs and the full text of the offending chat message.[1]

Defendants filed a reply letter on April 1, 2026.  (ECF No. 234.)  Noting that this Court had recommended dismissing eight of the remaining ten Plaintiffs, Defendants submitted that

---

[1] The retainer letter (ECF No. 232-1) is electronically signed by John Troy.  Although the full text of the chat message is recited in Troy Law's opposition (ECF No. 232 at p.3), the identity of which lawyer at Troy Law the chat was with is not clear from the record.

"we are not sure a further conference is necessary and would defer to the Court on next steps and how to handle the Troy Law Firm's conduct in this matter." (*Id.* at 1.) In other words, given that most of the Plaintiffs are no longer in this case, Defendants' motion for "an order directing the Troy Law Firm from making false and misleading statements to" Plaintiffs (ECF No. 230) could be largely moot. Nevertheless, because two Plaintiffs remain—and because of the seriousness of the alleged misbehavior—the Court is inclined to address Defendants' Motion to Intervene.

The chat message in question—sent by Troy Law in response to a Plaintiff expressing their clear desire to skip the settlement conference—says as follows:

> The case is ready for go for [sic] final settlement conference. You have a legal obligation to cooperate and proceed with the case. In any case, if you want to withdraw from this case, we may have no other choice but to go after you for paying the attorney fees for whatever efforts we make and time we spent for [sic] the case until now. Let us cooperate to wind up the case together. Thank you.

(ECF No. 232 at 3.) Any reasonable person would understand that as a threat:

- "You have a legal obligation";

- "we may have no other choice but to go after you"; and

- "Let us cooperate to wind up the case together," which carries an ominous undertone.

In particular, the phrase "we may have no other choice but to go after you" clearly implies that Plaintiff would need to pay Troy Law *out of Plaintiff's own pocket*.

Troy Law maintains that the representations in that chat message were "true" (*id.* at 3) and "not improper" (*id.* at 1). Specifically, Troy Law maintains that, although its payment structure under the retainer agreement was largely contingency based, it would still have a right to collect fees under the doctrine of *quantum meruit* and/or Section 475 of the New York Judiciary Law. (*See generally id.*) According to Troy Law, "[t]he doctrine of quantum meruit

4

demands that should a client withdraw from an action, particularly against the advice of their attorney, the attorney is entitled to reasonable reimbursement of outstanding legal fees and costs." (*Id.* at 2.)

**DISCUSSION**

**I.      Whether Troy Law Had a Quantum Meruit Right to "Go After" its Client**

*a.   Relevant Provisions of the Retainer Agreement*

The retainer agreement mentions *quantum meruit* only once. If Plaintiff settles its claims without consent of Troy Law, the retainer agreement provides that Troy Law shall have "the option of seeking compensation on a *quantum meruit* basis to be determined by the court." (ECF No. 232-1, ¶20.) Since Plaintiff has not settled without consent of Troy Law, this provision is inapplicable.

The retainer agreement specifically contemplates two ways the engagement might end early: discharge of attorney, and withdrawal of attorney. (*Id.*, ¶¶11–12.) In either event, Troy Law shall be paid "out of the recovery" for reasonable fees and costs advanced. (*Id.*) Since there has been no recovery to date, these provisions would appear to be inapplicable, though the Court addresses them more below.

Although not raised by Troy Law, another provision bears mentioning. In the section titled "Attorney's Fees," the retainer agreement provides: "**If there is no net recovery, Attorney will receive no attorney's fees.**" (*Id.*, ¶5 (bold and underline in original).)

Finally, Troy Law points to a clause providing the firm a lien for fees and costs advanced by the firm "under this agreement and on all proceeds of any recovery obtained[.]" (*Id.*, ¶10.) This, too, adds nothing, because the lien is defined "under this agreement"—which seems to

5

mean it is subject to the other terms laid out in the retainer agreement, including that attorney's fees and costs are paid only from the recovery, if any.

### b.  *Legal Standard:* Quantum Meruit

"Under New York law, a client may discharge his or her lawyer at any time, with or without cause.  If a lawyer is discharged for cause, he or she is not entitled to legal fees.  If the lawyer is discharged without cause and prior to the conclusion of the case, however, he or she may recover either (1) in *quantum meruit*, the fair and reasonable value of the services rendered, or (2) a contingent portion of the former client's ultimate recovery, but only if both of the parties have so agreed."  *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 263 (2d Cir. 2004).

"In order to recover in *quantum meruit* under New York law, a claimant must establish (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services."  *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005).  Although normally *quantum meruit* does not apply where there is a valid contract in place, "New York courts have crafted what appears to be a specific exception to this general rule, allowing an attorney who is discharged without cause to recover under *quantum meruit* even when the parties had an otherwise valid agreement covering the same subject matter."  *Guzik v. Albright*, No. 16-CV-2257 (JPO), 2017 WL 3601244, at *4 (S.D.N.Y. Aug. 21, 2017).  "This is true regardless of whether the attorney is pursuing *quantum meruit* recovery based on a retainer for hourly fees or based on contingency."  *Id.*

*c.*  *Application: Whether Troy Law is Entitled to* Quantum Meruit

Section 475 of the Judiciary Law—upon which Troy Law relies—provides that an attorney has a charging lien on the "proceeds" of "a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor[.]" *Jeon v. Riley*, No. 118CV2612NGGPK, 2020 WL 9208777, at *2 (E.D.N.Y. Nov. 23, 2020) (quoting N.Y. Judiciary Law § 475 (McKinney)), *report and recommendation adopted sub nom. Yungbaek Jeon v. Riley*, No. 18CV2612NGGPK, 2021 WL 926086 (E.D.N.Y. Mar. 11, 2021).  "The charging lien set forth in Section 475 is also equally enforceable against settlement funds as well as monetary awards resulting from a favorable judicial disposition." *Chen v. LJC Trading New York, Inc.*, No. CV193276SJFAKT, 2020 WL 10574176, at *3 (E.D.N.Y. Nov. 20, 2020).

Because there has been no recovery in this case, Troy Law's purported right to "go after" its clients has no basis in Section 475.  To be sure, Troy Law may be entitled to "a lien on the proceeds of any ultimate recovery by [Plaintiffs]." *Yu v. Kotobuki Rest., Inc.*, No. 17-CV-04202 (JMA) (JMW), 2024 WL 1259427, at *4 (E.D.N.Y. Mar. 25, 2024) (Wicks, J.).  But a lien on a *potential* recovery is a far cry from a present right to "go after" clients—which, as noted above, plainly implies taking money out of the client's pocket.

However, the Second Circuit has noted that *quantum meruit* is a distinct legal theory from a charging lien, and that recovery under *quantum meruit*, unlike a charging lien, is available even where recovery has not been obtained. *Universal Acupuncture*, 370 F.3d at 264.  There, like here, the retainer agreement was explicit that payment would come only as a percentage of a recovery or settlement. *Id.* at 261 n.1 (quoting the retainer agreement: "In the event that there is no recovery on the claim, there shall be no legal fee for this matter.").  Despite the contingent nature of the fee arrangement, the Court concluded that "the clients' lack of a monetary recovery

7

in the underlying litigation" did not preclude the attorney "from being awarded compensation for its services in *quantum meruit.*"  *Id.* at 264; *see also D'Jamoos v. Griffith*, No. 00CV1361(ILG), 2008 WL 2567034, at *3 (E.D.N.Y. June 26, 2008) ("[E]ven where there is no ultimate monetary recovery by the client, a discharged attorney may still recover in *quantum meruit* for the services he rendered."), *aff'd*, 340 F. App'x 737 (2d Cir. 2009).  At first blush, then, it might seem Troy Law's position has some legs to stand on.

The difference, however, is that in this case the retainer agreement explicitly disclaims and renounces such recovery.  As Troy Law acknowledges, *quantum meruit* is only a default rule. *See* ECF No. 232 at 2–3; *Judd Burstein, P.C. v. Long*, 180 F. Supp. 3d 308, 313 (S.D.N.Y. 2016) (noting that although "an attorney employed pursuant to a contingency fee agreement is entitled to relief in *quantum meruit*," "parties are free to contract around default rules").  "Put another way, *quantum meruit* relief is available only where a contract does not expressly cover the terms of an attorney's compensation in the event that the attorney is terminated or withdraws." *Judd Burstein*, 180 F. Supp. 3d at 313.

As noted above, the retainer agreement here expressly provides that if Plaintiff discharges Troy Law, Troy Law shall be paid "out of the recovery" for reasonable fees and costs advanced. (ECF No. 232-1, ¶11.)  The retainer agreement does not limit this provision to discharge with cause.  That is, whether the discharge is "with" or "without" cause, Troy Law is paid out of the recovery.  Hence, even if Troy Law is discharged without cause—*i.e.*, the only situation in which *quantum meruit* could apply[2]—the firm's payment is contractually capped at a percentage of Plaintiffs' recovery (if any).

---

[2] At oral argument, Plaintiff's counsel conceded that this provision implies that Troy Law will get paid even if discharged for cause.  But, as Plaintiff's counsel also conceded, that is misleading, because an attorney discharged for cause is not entitled to payment by law.  "When a client discharges her attorney for cause, 'the attorney has no right to compensation or a retaining lien, *notwithstanding a specific*

To be sure, Plaintiffs here did not discharge Troy Law. And this is the crux of the dispute. As the Court understands Troy Law's equivocal letter, Troy Law may concede that if Plaintiff *discharged* Troy Law, then Troy Law would have no conceivable claim under *quantum meruit*, because the retainer agreement expressly limits Troy Law's payment in that situation to the recovery. Here, however, Plaintiffs did not terminate Troy Law. Plaintiffs simply decided not to show up to the settlement conference. In Troy Law's words, "Client has neither terminated the services of Troy Law, nor has Troy Law withdrawn from their representation . . . . [T]he client who expressed his preference not to be associated with the settlement remains a Plaintiff and a client of Troy Law." (ECF No. 232 at 3–4.) Because this circumstance was not contemplated in the retainer agreement, Troy Law argues the default rule of *quantum meruit* controls.

But—as Troy Law also acknowledges—Plaintiffs opting out of a settlement conference despite knowing it would lead to dismissal of the case is *effectively* no different from Plaintiffs discharging Troy Law. (*See* ECF No. 232 at 3 ("The effect is the same — whether Troy Law withdraws its representation or the client terminates the services of Troy Law or the client refuses to participate (thereby giving grounds for Troy Law to withdraw), the relationship between Troy Law and the client is nonetheless at its end prior to the conclusion of the action.").) And while Troy Law argues (somewhat confusingly) that this equivalence cuts in favor of *quantum meruit*, it actually cuts in the opposite direction.[3] That is, just as the retainer agreement

---

*retainer agreement.*'" *Holcombe v. Matsiborchuk*, 747 F. App'x 875, 877 (2d Cir. 2018) (quoting *Campagnola v. Mulholland, Minion & Roe*, 555 N.E.2d 611, 614 (N.Y. 1990)) (emphasis added).

[3] Troy Law's position on this point is inconsistent:

> In this case, as provided above, the retainer agreement covers the terms of Troy Law's compensation in the event that the attorney is terminated or withdraws, but it does not expressly cover a situation where the client ceases to participate in the case or communicate with counsel. It is logical, therefore, that quantum meruit applies in this situation. The effect is the same — whether Troy Law withdraws its representation or the

explicitly precludes *quantum meruit* where Plaintiff discharges Troy Law, so too it implicitly precludes *quantum meruit* where Plaintiff voluntarily drops the case, because the two scenarios are functionally equivalent.

In sum, the retainer agreement means exactly what it says: "**If there is no net recovery, Attorney will receive no attorney's fees.**" (ECF No. 232-1, ¶5 (bold and underline in original).) It was therefore misleading—at best—for Troy Law to represent to its clients that it could "go after" them to pay out of pocket if they exercised their right to withdraw from the representation.

"Even if [the Court] were to read this language as ambiguous," however, "public policy considerations compel the same result." *Oneida Indian Nation of New York State v. Bond Schoeneck & King, PLLC*, 503 F. App'x 37, 39 (2d Cir. 2012). That is because "[t]he general

---

client terminates the services of Troy Law or the client refuses to participate (thereby giving grounds for Troy Law to withdraw), the relationship between Troy Law and the client is nonetheless at its end prior to the conclusion of the action. In all these cases, *quantum meruit* applies and Troy Law is entitled to compensation for the services it rendered, as well as reimbursement for the costs it assumed upfront.

ECF No. 232 at 3. This paragraph first acknowledges that the retainer agreement covers only withdrawal or discharge, not "where the client ceases to participate[.]" And, because *quantum meruit* applies only where the express terms of the contract are silent, it follows the contract's silence here could open the door to *quantum meruit*. Hence, "[i]t is logical . . . that quantum meruit applies in this situation." But then in the very next sentence Troy Law reverses its position and maintains that the present situation is effectively the same as withdrawal/discharge, and **therefore** *quantum meruit* should apply ("The effect is the same…"). Besides contradicting the previous sentences, this makes no sense in and of itself. If client non-participation is equivalent to withdrawal/discharge, then that should be an argument **against** applying *quantum meruit*, because the situation is implicitly covered in the contract itself. Later on the same page, Troy Law reverts again to its original position:

Client has neither terminated the services of Troy Law, nor has Troy Law withdrawn from their representation (nor, did we judge that a withdrawal was likely to be granted, see Goolden, supra). Client has only expressed their desire not to attend the settlement conference despite the consequences. At that juncture . . . the client who expressed his preference not to be associated with the settlement remains a Plaintiff and a client of Troy Law. Their obligation to comply with Court orders persisted.

*Id.* at 3–4.

10

rule that equivocal contracts will be construed against the drafters is subject to particularly rigorous enforcement in the context of attorney-client retainer agreements." *Albunio v. City of New York*, 11 N.E.3d 1104, 1107 (N.Y. 2014) (internal citation and quotation marks omitted). The New York Court of Appeals[4] has emphasized that "[t]he importance of an attorney's clear agreement with a client as to the essential terms of representation cannot be overstated. The client should be fully informed of all relevant facts and the basis of the fee charges, *especially in contingent fee arrangements*." *Shaw v. Manufacturers Hanover Tr. Co.*, 499 N.E.2d 864, 866 (N.Y. 1986) (emphasis added). The most charitable argument in favor of Troy Law is that the retainer agreement is ambiguous. Client withdrawal might be subsumed under the category of attorney discharge, in which case paragraph 11 would preclude *quantum meruit*, as discussed above. Or, client withdrawal might be its own category, not contemplated in the agreement, in which case *quantum meruit* might be viable (setting aside paragraph 5 that "**If there is no net recovery, Attorney will receive no attorney's fees**"). Assuming—again, charitably—that these interpretations were in equipoise, the tie would go to the client. "When a retainer agreement can be read to support two different views, public policy requires the Court to adopt the reading that is more favorable for the client." *Holcombe v. US Airways Grp., Inc.*, No. 08CV1593SLTJO, 2017 WL 10084142, at *14 (E.D.N.Y. Aug. 4, 2017). Accordingly, there is absolutely no basis for Troy Law's assertion that it could legally "go after" its clients for fees.

---

[4] "Terms in attorney fee agreements are analyzed under the state contract laws where executed." *Beattie v. Farmanian*, No. 20CV3523JMASIL, 2022 WL 2467644, at *3 (E.D.N.Y. May 9, 2022), *report and recommendation adopted*, No. 20CV03523JMASIL, 2022 WL 3914987 (E.D.N.Y. Aug. 31, 2022).

## II.   Whether Plaintiff Had a "Legal Obligation" to Cooperate and Proceed with the Case

Troy Law maintains that its representation to Plaintiffs that "[y]ou have a legal obligation to cooperate and proceed with the case" was "true" in light of a section of the retainer agreement requiring the client to be "truthful and cooperative with Attorney and keep Attorney reasonably reachable and informed of Client's address, telephone number, and whereabouts." (ECF No. 232 at 3 (quoting ECF No. 232-1, ¶4).) Troy Law insinuates that Plaintiffs failed to "communicate with counsel" (*id.*; *accord id.* at 2 ("noncommunication with counsel")), and, therefore, were delinquent in their contractual responsibilities to "be truthful and cooperative with Attorney and keep Attorney reasonably reachable" (ECF No. 232-1, ¶4).

The irony is that Plaintiffs did not fail to communicate with counsel. By Troy Law's own telling, Troy Law sent the at-issue chat message to Plaintiffs **in response** to a Plaintiff "express[ing] their desire to not to [*sic*] attend the settlement conference due to a scheduling conflict[.]" (ECF No. 232 at 3.)

Moreover, as counsel conceded at oral argument, Troy Law never took steps to withdraw from the engagement. If Troy Law felt its clients were being uncooperative and making the representation unreasonably difficult for Troy Law to carry out, then Troy Law could have withdrawn. *See* N.Y. Rules of Pro. Conduct r. 1.16(c)(7) (permitting attorney withdrawal where "the client fails to cooperate in the representation or otherwise renders the representation unreasonably difficult for the lawyer to carry out employment effectively").

More fundamentally, even if Plaintiffs were delinquent in their obligations under ¶4 of the retainer agreement, Troy Law's representation that its client had a "legal" obligation to appear was a bridge too far. A non-lawyer receiving that message would not understand it to mean a "contractual" obligation, as Troy Law now attempts to recast it. (*See* ECF No. 232 at 3.)

12

Rather, the client would understand a "legal" obligation as just that: an obligation arising under *law* (*e.g.*, statute or court order) carrying the threat of *legal* sanctions (*e.g.*, fines, imprisonment, contempt). This is especially the case coming from the one's attorney, who is supposed to work *for* the client, not *against* them.

In short, Troy Law's message to its clients was misleading.

## **CONCLUSION**

Troy Law's message to its clients was untrue—both in that Troy Law could "go after" them for fees, and in that they had a "legal" obligation to appear. Defendants' motion is therefore **GRANTED**. Troy Law is directed to refrain from making false representations as to the fee arrangements and obligations.

Additionally, by pressuring and preying on its own clients, Troy Law exhibited an unconscionable abuse of the trust and power implicit in the attorney-client relationship.[5] In light of this conduct, Troy Law is referred to the E.D.N.Y. Attorney Disciplinary Committee.

Dated: Central Islip, New York
April 28, 2026

**S O  O R D E R E D:**

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

---

[5] For instance, one could argue that by pressuring Plaintiffs to attend the hearing, counsel violated N.Y. Rules of Professional Conduct 1.2, which provides that "a lawyer shall abide by a client's decisions concerning the objectives of representation."

13